**Wade Lynn RASNER, Movant,**

v.

**KENTUCKY BAR ASSOCIATION, Respondent.**

No. 2001–SC–0688–KB.

Supreme Court of Kentucky.

Oct. 25, 2001.

## OPINION AND ORDER

Movant, Wade Lynn Rasner, of Owsley County, Kentucky, was admitted to the practice of law in the Commonwealth of Kentucky by order of this Court entered on May 6, 1983.

On August 28, 2000, the Inquiry Commission issued a four-count charge (KBA File # 8066) against Movant which alleged violations of the Kentucky Rules of Professional Conduct in connection with Movant's representation of an out-of-state client:

1. On April 5, 2000, an automobile accident in Breathitt County Kentucky took the lives of Denise E. Roberts and Jaime E. Roberts. Arnold Roberts is the late husband of Denise E. Roberts and the father of Jaime E. Roberts.

2. Shortly after the accident, Mr. Roberts achieved an agreement with Allstate Insurance Company ("Allstate") resolving the claims of Denise and Jaime Roberts. Allstate informed Mr. Roberts that it would not release payment until he was appointed representative of the estates of his wife and daughter. Subsequently, Mr. Roberts set out to achieve the appointments on his own, but shortly thereafter decided he would benefit from the assistance of a lawyer. Respondent was recommended to Mr. Roberts by a local courthouse staff-person; so Mr. Roberts contacted the Respondent in an effort [to] get his assistance in getting appointed representative of the estates of his wife and daughter.

3. On or about May 1, 2000, accompanied by Debra Waugh, Mr. Roberts met with the Respondent at the Respondent's law office in Booneville, Kentucky. During this meeting, it was expressly stated to the Respondent that Mr. Roberts had settled all claims with the insurance company, and that the

Respondent's services were needed only to the extent necessary to secure Mr. Roberts' appointment as the representative of the estates of his wife and daughter. At the close of this meeting, inquiry was made concerning the attorney's fee Respondent would charge to provide the anticipated legal services. In response, Respondent asserted that he would collect "1/3" of the insurance proceeds. Surprised and caught off-guard by the Respondent's declaration regarding his fee, no reply manifesting assent to the proposed fee arrangement was made by Mr. Roberts or Ms. Waugh.

4. Subsequent to his meeting with Mr. Roberts and Ms. Waugh, Respondent immediately undertook efforts to pursue Mr. Roberts' appointment as the representative of the estate of Denise and Jaime Roberts.

5. On May 1, 2000, Respondent sent a letter to Michigan attorney, William J. Conlin requesting an affidavit so that the respondent could prove the will of Denise E. Roberts....

6. Mr. Conlin signed an affidavit and returned it to the Respondent on May 8, 2000 in order to achieve the purposes mentioned in Respondent's May 1, 2000 letter....

7. On May 15, 2000, Mr. Roberts sent a letter to the Respondent requesting "an invoice ... for [the Respondent's] services to date." This letter was transmitted to the Respondent by facsimile on May 16, 2000....

8. On May 16, 2000, Respondent filed a petition for the probate of a will and the appointment of an executor in the matter of: *In re the Estate of Denise Roberts*, Owsley District Court, Case No. 00–P–00029. That same day, the Owsley District Court entered an order appointing Mr. Roberts executor of the estate of Denise Roberts....

9. On May 16, 2000, Respondent also filed a petition for the appointment of the executor in the matter of: *In re the Estate of Jaime Roberts*, Owsley District Court, Case No. 00–P–00028. That same day, the Owsley District Court entered an order appointing Mr. Roberts administrator of the estate of Jaime Roberts....

10. On May 16, 2000, Respondent sent a letter to Allstate Insurance Company serving notice on Allstate that he represented the estates of Denise and Jaime Roberts....

11. On May 16, 2000, Respondent sent a letter to Mr. Roberts enclosed with copies of the papers filed in the probate court as well as a copy of his letter to Allstate referred to in numerical paragraph 10. The respondent also states in this letter, in part, as follows:

> ... I am ... in receipt of your May 16th fax which I am a little confused on. If you are attempting to cut me out of my potential fee that we agreed upon from the insurance money due both estates, then that cannot happen[.]

12. On May 17, 2000, Mr. Roberts sent Respondent a letter which states, in part, as follows:

> I do not intend not to pay you for your services. I ... disagree with the terms. I have spoke to several people, including the insurance company and am now aware you should have mentioned I could pay for your services processing papers and representing me for the issue of the estate at an hourly rate. At no time during our conversations did you mention this. When the question did come up regarding payment, you said you would take one third of the estate as though there was no other option.

. . .

13. On May 18, 2000, Respondent sent a letter to Mr. Roberts which states, in part, as follows:

> I do not take probates on an hourly basis, however, so there will be no hard feelings in your time of grieving, please accept this letter as notice that I will complete all probate matters in both Jaime[']s and Denise's probates for a total of $5,000.00. That is substantially less than the ⅓ that we originally agreed upon. I was not trying to take advantage of you, so let's leave it at that.

. . .

14. On May 21, 2000, Mr. Roberts issued a facsimile transmission to the Respondent requesting "a complete itemized statement listing all services" involving the estates of Denise and Jaime Roberts. Mr. Roberts also indicates in this facsimile transmission that

he would review the information supplied in response to his requests by contacting the Respondent regarding payment. . . .

15. On June 5, 2000, Mr. Roberts issued a facsimile transmission to the Respondent discharging him and again requesting an itemized statement of the services rendered. . . .

In Counts I and II, the Inquiry Commission charged Movant, in the alternative, with violations of SCR 3.130–1.5(a)[1] for either "pursuing a one-third (⅓) contingent fee in connection with the representation involving the estates of Jaime and Denise Roberts" (Count I) or "by pursuing a one-third contingent fee to recover the insurance proceeds arising out of the motor vehicle accident" (Count II). Count III alleged that Movant had violated SCR 3.130–1.5(c)[2] "by failing to have a written contingent fee agreement with Mr. Roberts." Count IV alleged that Movant had violated SCR 3.130–8.3(c)[3] "by attempting

1. This rule provides:
   A lawyer's fee shall be reasonable. Some factors to be considered in determining the reasonableness of a fee include the following:
   (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
   (2) The likelihood, that the acceptance of the particular employment will preclude other employment by the lawyer;
   (3) The fee customarily charged in the locality for similar legal services;
   (4) The amount involved and the results obtained;
   (5) The time limitations imposed by the client or by the circumstances;
   (6) The nature and length of the professional relationship with the client;
   (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
   (8) Whether the fee is fixed or contingent.
   SCR 3.130–1.5(a).
2. This rule provides:

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. Such a fee must meet the requirements of Rule 1.5(a). *A contingent fee agreement shall be in writing* and should state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon recovery of any amount in a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and showing the remittance to the client and the method of its determination.
SCR 3.130–1.5(c) (emphasis added).

3. The rule provides:

It is professional misconduct for a lawyer to:

to impose a one-third (⅓) contingent fee upon Mr. Roberts when Respondent knew he was not entitled to the fee."

Movant admits that his actions were in violation of SCR 3.130–1.5(a) and SCR 3.130–1.5(c) as alleged in Counts II and III of the Inquiry Commission's Charge, but denies that he charged a one-third (⅓) contingency fee in connection with the probate matter as alleged in Count I and that he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation as alleged in Count IV. Movant thus moves this Court to issue a public reprimand and to terminate the disciplinary proceedings against him. The Kentucky Bar Association, through bar counsel, states no objection to the Movant's motion and asks this Court to grant Movant's motion.

IT IS THEREFORE ORDERED THAT:

(1) Movant, Wade Lynn Rasner, be and hereby is publicly reprimanded after having acknowledged that he engaged in unprofessional conduct as charged in Counts II and III, and such discipline shall terminate the KBA File # 8066 disciplinary proceedings against Movant.

(2) In accordance with SCR 3.450, Movant is directed to pay all costs associated with these disciplinary proceedings against him, said sum being $13.33, and for which execution may issue from this Court upon finality of this Opinion and Order.

All concur.

Entered: October 25, 2001.

/s/ Joseph E. Lambert
CHIEF JUSTICE

. . .
(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]